We have a busy morning this morning. We have four cases, five cases before the court. One of the cases, Baker versus Microsoft Corporation 17-1357. We've taken on the briefs alone, no oral arguments. So we have four oral arguments scheduled for this morning. The first argument is Cascades Projection versus Epson America 17-1517. Mr. Mann, you're reserving five minutes of your time for rebuttal, is that correct? Yes, your honor, that's correct. Okay, you may proceed. Thank you, your honor, may it please the court. Your honor, there are a number of issues in this case, but the primary errors made by the board below were the claim construction with respect to three claim elements. Those claim elements were Fresnel polarizer, means for enhancing brightness, and means for focusing. I'd like to take the probably the most egregious error and the most successful one. Does invalidity here rise and fall with your claim construction? Yes, it does, your honor, and the way that comes into play is this. In essence, the board adopted an overly broad interpretation of the claims, and under that overly broad interpretation, the board was then unable to find purported prior art that would render the claims obvious. So our position is the claims, somewhat different from an infringement analysis, we're arguing that the claim should be interpreted somewhat more narrowly so that the prior art does not show what we believe the claims actually cover. What's the status of the certificate of correction? That's a good question, your honor. I'm not aware of any action having been taken on that. I'm not primarily responsible, but I think I would have been advised if that had something happened. So with respect to the Fresnel polarizer, Mr. Goldkopf, the inventor here, again, let's back up a little bit. His whole goal in this invention was to make maximum use of the available light. You have a light source, and it comes out that sort of puts light all over, put a lens in front of that, that produces a circular beam, and a lot of light is lost. Now when you're using these image-forming elements, it's important to have polarized light. You can't just have any sort of light, so it has to be polarized. And with traditional polarizers, when you polarize light, you lose, in essence, half of it. Actually somewhat more than half of it. You take the stuff that you want, the portion that's not properly polarized, you discard. So he said that's a big way... So you use the term polarizing, so the Fresnel polarizer leaps out in its construction. So you say in your brief, and I read in other parts of the other briefs, that this is a coined term, that we're dealing with a coined term here, but you don't go as far as to say that the Panty acted as its own lexiographer. We're making a somewhat subtle distinction here. Instead of saying that there is a word that's out there, for example, lubricant, and you say, well, there's a class of lubricants. When I say lubricant, I mean a particular type of oil that has these characteristics. That's what our interpretation is of being a lexicographer. Here, Mr. Dolgoff created an entirely new word. There was no such thing... But it's not just embracing a specific meaning or specific definition of a term or a word, it's actually describing it, having a specific description of the word as having a specific meaning. That's our case law on acting as your own lexiographer. I don't see that that happened here. No, no, it did not. This was a sort of a case of, if I come up with an entirely new technology, and for lack of any existing terminology, I said, well, this is a phratostat, and that's just what I call it because it doesn't exist anymore. This is the name I gave it. To me, that's a coined term, and that is what happened here with Mr. Dolgoff. He's the first one that came up with this idea of using a stepped plate with some optical coatings, and the optical coatings are critical here. Optical coatings that will do two things. A, it results in an easily constructed economical structure. When you say optical coating, are you referring to anti-reflective coating? And again, bear with me, Your Honor, because I'm not sure I fully understand the physics on this. My understanding is it's a dielectric coating that will change the coefficients of refraction and so forth. Whether that is a reflective coating or not, I don't know, but the coating is key in order to get the polarization effect. And again, it's not merely polarizing. What Mr. Dolgoff wanted to do was polarize the light in such a way that you convert all of it, more than 90% of it, to the desired polarization, as opposed to throwing away half the light. Is a hologram a coating, necessarily? In our view, it is. We're saying that was an example of a type of coating, and I think we made this point in our brief that holograms traditionally have been done using photographic film, which is a clear coating with a bunch of chemicals put on it. So the hologram would be a form... That's an emulsion, actually. Emulsion, exactly, exactly. Where's the evidence that explains a hologram is an optical coating? Again, well, we just put that in. I think that's just sort of, you know, standard what somebody would... The hologram question didn't come up. If you recall... Wasn't that the key issue for this, whether optical coating includes holograms or not? Well, with respect, due respect, Your Honor, what happened was Dr. Kahn, the expert for, I believe it was Epson, himself said that with respect to the Pranell polarizer, that you have to have a coating. The expert, our opponent's expert, was in agreement on this, and then after the evidence had been submitted to the board, the board on its own said, oh well, nobody asked him about holograms. It says the patent also says holograms. Nobody asked Dr. Kahn about holograms, so the board, in essence, did this after the evidence was submitted, and when it was too late for us to get in there and clarify the issue. So is the answer no? There's no evidence that I can read that explains to me that a hologram is or is not an optical coating? If you, by evidence... Did you ask for rehearing on that issue? I don't believe so. I was not involved in that aspect of it, but I do not believe that there's a request for rehearing. Well, then what basis do I have to disturb the board's view that a hologram is not an optical coating? Because, and I don't mean to be flippant here, Your Honor, the interpretation of Pranell polarizer did not include a hologram either. What the board said is, even though the patent says, let's assume for the sake of argument that the hologram, but the board... Even if we agree with you that a hologram and the liquid crystals discussed are types of coating, what makes us find that all Pranell polarizers must include those things? Because that is what the only evidence of what a Pranell polarizer is, is the 347 patent, the work of Mr. Dolgoff himself. Remember, this is not... He's not acting as a lexicographer. It's a coin term. He invented the Pranell polarizer, and there's no evidence, I think, even Epson and Sony, Sony that said they could not find any other evidence of anyone else using the term Pranell polarizer. But the prior art has disclosed that it teaches optical coating. No, no, the prior art that was relied on by the SACI, I think the distinctions were those did not have the optical coatings. That's why it's important to us. We're saying that the prior art that the board relied on... So you didn't act as your lexicographer and say Pranell polarizer has to have an optical coating. You're just saying that because the specification shows that all the embodiments have an optical coating, that that's part of the invention. Yes, Your Honor, in essence... But that's the problem with that argument is we don't know whether the specification includes a hologram, and we don't know whether a hologram is an optical coating or not. No, we do know that the specification refers to holograms. Well, that's what I just said. It definitely refers to them, and we don't know whether a hologram is an optical coating or not. And so if it's not an optical coating, then your coding. Well, then in that case it would still have a hologram. It has to have one or the other. There is no disclosure in the patent of a Pranell polarizer that does not have either an optical coating or a hologram. The board said you can have a Pranell polarizer that dispenses with both, and that's our argument. So we don't agree that a hologram is not an optical coating, but for the sake of argument, let's assume that's true. But you're essentially arguing that the claim term should be limited by the embodiments in the specification. Yes. Even though you didn't act as your lexicographer. We're saying it's a coin term. That's correct. Isn't that contrary to our case law that you don't limit claims to their embodiments unless you specifically act as a lexicographer? I believe in terms of a coin term that the coin term would be what is disclosed. I think we made reference to a case... What's your legal authority that supports that position? I have it in my brief. I don't have it memorized, Your Honor, but it was addressed in one of our briefs. It was a case that says basically that claim terms should not be expanded beyond what the inventor invented. There is a site I'd like to call the specific citation. Where does the specification say that liquid crystals and holograms as types of 44 through 46 of the 347 patent we have in part of our brief extensive quotes from those columns. Okay, Counselor, you're into rebuttal time. Do you want to reserve that? I would like to reserve that. Thank you, Your Honor. Thank you. Counselor Ball, do I understand you're splitting your argument time with Mr. Bramhall and you're taking eight minutes and she's taking seven? That's correct, Your Honor. Okay. And may it please the court, I'd like to begin with the hologram and other embodiments in the specification. So, Your Honor, if we actually go to the specification of the patent, I'd just like to point out a couple of specific passages which I think might be helpful and I would like to begin with page 210 of the appendix at the top of column 47. Could you repeat that? I'd like to begin with page 210 of the joint appendix at the top of column 47. Okay. And what I want to address first, Your Honors, is the question raised during Cascade's presentation regarding what the specification discloses. I'll go on to coin terms and other issues in a moment. But if we begin at the top of column 47, any of these methods to produce a relatively flat, and I'll put my finger on relatively flat, any of these methods to produce a relatively flat polarizer plate or Fresnel polarizer that can be illuminated at normal incidents, means right angles, have use. Any of these methods have use. Now, what are these methods? We go to columns 44 through 46. I agree with Cascade's counsel. Column 46, in particular, what we're interested in, and we were the ones that raised this point below in our briefing, and the board agreed with us, is beginning at column 34, all previously described McNeil polarizers and Fresnel polarizers have utilized multi-layer dielectric coatings, but then it goes on to describe additional embodiments. One of the embodiments is the hologram. Judge Hughes, as you pointed out, there's no record evidence to support that the hologram is a coating. There is no record evidence on that. Going further, if we get to line 55, various other arrangements, and this is critical, Your Honors, because look at the figure numbers in lines 55 and 56. There's no other there. I'm sorry? It doesn't say other. It says various arrangements. Oh, I'm sorry, Your Honor. Various arrangements, but these are going to be other, but you're right about that. Yes, you're exactly right, Judge Weld. Various arrangements in figures 54, 64, 80, 81, 82, 85. Five of those figures are the figures that our opponent relies on for requiring coatings. These arrangements can utilize a I don't think anybody can argue that a liquid crystal is a coating. A liquid crystal is a device. It's an LCD. There's no record evidence that this is a coating. There's no record evidence that coatings are required. Your Honors, going to the question of the case law, coin term versus lexicographer, the way that I read my mail, what I think is that Phillips applies, and Phillips is the ground rule for claim construction. Phillips recognizes lexicography, of course, but lexicography isn't in view of Phillips. Any coin term needs to be in view of Phillips. We're going to read the patent in view of the specification. We're not going to read limitations into the claims. There's no basis to read the limitations into the claims here. When this gentleman, Mr. Dolgoff, wrote his patent application and talked about Fresnel polarizer, the action was in the word Fresnel. The action was not in the polarizer. Judge Reyna, you pointed out, look, column 45, lines 22 through 24, depositing materials in alternating layers, as is known in the art, to make a McNeil polarizer. This gentleman didn't invent multilayer coatings. The gentleman who invented multilayer coatings was named McNeil, and his patent issued in 1946, and it's in the record. Those coatings are more than 50 years old. Eugene Dolgoff did not invent coatings. What he did was he said, let's use Fresnel structures. Let's save space. Let's make it lighter. Let's save cost, and he did Fresnel. And your honors, what did he do with Fresnel? Fresnel was not new either. No, Fresnel's not new either, but if we're going to talk about what is it that Mr. Dolgoff is interested in when he talks about a Fresnel polarizer, he's interested in the Fresnel structure. The passage that Cascades principally relied on in its briefing was the passage where he said that he had devised a Fresnel-McNeil prism. So let's say that's a type of Fresnel polarizer, but he had devised a Fresnel-McNeil prism. What did he say about that prism? This is column 44, page appendix 208. He said it's got a multiplicity of tiny sawtooth surfaces, weighs much less, consumes less space, costs less to produce. Column 44, lines 2 through 8. That's what he's interested in is that Fresnel structure, and it goes on and on. We can look at what he says about Fresnel prisms. Let me just take an example that's the same page, the preceding page of the joint appendix, page 207, column 42, line 24. Fresnel prisms can be used to reduce size, weight, and cost. Let's look at what the gentleman says about Fresnel mirrors. We can look at figures 47 to 49 on page appendix 168, and we can look at the Fresnel mirrors, and we can see how because there's this sawtooth construction, the mirror takes up less space. We can go to the next page of the figures, page 169. I'm sorry, I'm going too quickly. So page 168, figures 47 through 49 show the Fresnel mirror, and we can see the sawtooth construction, which makes it smaller. We go to page appendix 169, figure 51. We see the Fresnel parabolic reflector. It's interesting because the dashed line shows what a normal parabolic reflector looks like. He uses the Fresnel structure, and that allows him to have a narrower opening, and the narrower opening is described at column 34, line 5 of the pack. Now, here's something that's very interesting about the Fresnel parabolic reflector. Mr. Dolgoff says this is in column 34, lines 1 through 3. The same logic can be used to produce other surfaces, such as a Fresnel elliptical reflector, and the like. What the gentleman is interested in is Fresnel structure. He's not interested in the particular composition of the polarizer. There's just no basis in this record to disturb the board's decision that a Fresnel polarizer is as the board found it to be. No coding, no polarization conversion. Let me just very briefly mention conversion. It's been unclear to us in reading the briefing whether there's a challenge on the conversion point. I think the principal argument here on appeal is whether or not a Fresnel polarizer requires coatings. It doesn't. Whether the Fresnel polarizer requires conversion, also not correct. There's a specific embodiment in the patent that shows use of Fresnel polarizer as an analyzer that doesn't do polarization conversion. That's described in our briefs. I'm out of time, so I'll cede the floor to Mr. Bramhall. Thank you, your honors. Thank you. Good morning, your honors. Counselor, you have seven minutes. Okay. I want to just pick up where Mr. Ball left off for just a moment. There's one other element, I think, that supports our position in terms of an optical coating being too narrowing. Not only are holograms one other option at the same location as the dielectric coating, but if you look at column 46 of the patent, lines 21 to 23, you see yet another option. This other option is the use of a simple diffraction grating. You see it says, another way to reduce the size, weight, and cost of the McNeil or Fresnel polarizer is with the use of holograms or simple diffraction gratings. Those are physical structures that would be added at that interface, not an optical coating. I also wanted to address the point- How do we know that? How do we know what an optical coating is and how it's distinguishable from what you just read to us? Well, I think that there's an aspect here of the plain ordinary meaning of a coating. An optical coating, when they were originally discussing it, Cascades, was in connection with the multi-dielectric coating that goes at the interface. Are there other kinds of optical coatings apart from that one you just said? The one that I mentioned, the diffraction grating or the dielectric? No, the multi, yeah. Yeah, I think there are other options. I think it's a broad category and the multi-dielectric coatings is one example. The problem with this case is that these are very technical terms and all we have is the specification to discuss whether they're not optical coatings or they are optical coatings. You say one thing, your friend says the other thing. I mean, you may be wrong for all I know. You may be right. I have no idea without expert testimony to distinguish between the two. Well, there is one other disclosure that I think may help your honor on that point. There's a disclosure in the patent that actually says, and hopefully I can find this and I was able to, at column 42 to 43, there's actually a disclosure regarding the use of a dielectric surface. So that's just the plastic surface, the glass surface alone, and it still accomplishes the same polarization splitting aspect. This is column 42, lines 65 to column 43 at about line three. And it says here that the McNeil prism makes use of the fact that light, which hits a dielectric surface at an angle, such as Brewster's angle, which is 90 degrees, excuse me, 45 degrees, splits into reflected and transmitted beams, which are somewhat orthogonally polarized. And then it goes on to say you could add layers of coating to make that even better. But what that discloses is that even without a coating, you still get the effect you're looking for. Why is this important? I mean, it's a construction of whether we have coating or not, it's not dispositive here, is it? No, I don't think it is, because under, in the prior art, and your honor's asked a question about that, both Sato and Mitsutaki have what we would consider. So even if we, even if we accept the construction of the appellant here of Cascades, how does that affect the prior art? Do we still have an invalidity situation? Yes, absolutely, your honor. Now the issue from our perspective is that the board didn't make any factual findings about those two, about the optical coating of those two references, Sato and Mitsutaki, because the board adopted our construction, which did not require an optical coating. So if there were a finding that there needed to be an optical coating, then we may need to remand and then show that the prior art has the optical coating. That is true. Okay. And let me just address one point. He actually, Mr. Mann mentioned that the hologram issue did not come up, but it did come up. At A4224, our reply brief, page 19, we raised this exact issue. So they were on notice of this, going into the hearing. We raised it at that point in our reply, because they raised it in their patent owner response, and that was the appropriate time. I just have one other point I'd like to raise to your honors, which is, at the beginning, there was a question of whether this is all about claim construction, and at least with respect to the means for enhancing brightness, it's not. Because there was agreement on the construction for means for enhancing brightness, both in terms of the function and the structure. So there, the real question is whether the prior art discloses the corresponding structure. So that would be a substantial evidence question, as opposed to a So unless there are any other questions for me, I'd ask that the board be affirmed. Okay, thank you. Thank you. Well, thank you, your honor. And to address your honor's question about the authority we're relying on regarding the coin term, we're relying on NETWRD LLC v. Central Corp. That's a 242 F3rd 1347, a decision of this court. I'm sorry, give me that site again. Certainly, it's 242 F3rd 1347, and your honor, this is cited at page 8 of our reply brief. If that might make it more easier. A couple other points, your honor, I just want to address these quickly. When counsel was referring to the patent itself, he quoted some language from column 44. What counsel did not say is, immediately following that, the patent says, this is referring to the Fresnel polarizer. It says, figure 78 depicts this device, that being the Fresnel polarizer. It says, a multi-layer dielectric coating is deposited, etc. So right after the language was quoted by counsel, the inventor himself describes it as having a multi-layer coating. But again, I don't want to belabor this point. The point I'm making is, whether it's a diffraction grading, whether it's a coating, whether it's a hologram, there's always something. It's not simply a vaguely defined stepped glass surface that somehow magically performs polarization. That's the point we're trying to make. And again, we're saying that that structure was not disclosed by Mitsutaki or Sato. How does NetWord specifically read on coined? It basically, it says that you can't claim more than what you've actually invented. Yeah, that's a general concept. So that's how, I haven't read that case in a while, your honor. The short answer is, if I invent a new structure, I can't turn around later on and say, oh, that also includes that stuff I didn't describe that somebody else invented. But your use of a coined term is to limit construction. Exactly. Paradoxically, what we're arguing here is the claim should be narrowly construed to avoid the prior art, whereas usually the situation, as we're saying, it should be broader to cover. How is that case on point? It may not be. That is the case we cited then, your honor. I don't think you've heard it, but that's the case that we cited in our brief. Okay. Do I have any more time, Morton? You have a minute and a half. Okay. One thing I wanted to raise is on the means for enhancing brightness. Our point on that thing is, although we agreed on the structure, it's the way in which the function is accomplished. Throughout this patent, Mr. Golgoff has said his goal is to have uniform brightness. That some of the earlier claims specifically says that there is no uniform brightness. He specifically makes it brighter in the center and dimmer as you get out to the corners. Mr. Golgoff does the exact opposite, and that comes into the way and the result of the means for enhancing brightness. That's the significance of that. We haven't addressed that, but I did want to raise that point. I think we've belabored this long enough, your honor. I want to thank you. Thank you, sir. Thank you.